UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

VINCENT GEORGE JR., MARVIN SANDERS,
ALFONSO DURAN, WILLIAM PARKER, BROAD
PERRY,

                             Plaintiffs,

        -against-

THE CITY OF NEW YORK, et al,

                             Defendants.
-----------------------------------------------------------x

-----------------------------------------------------------x
JOSE ZABALL,

                             Plaintiff,

        -against-

C.O. BENBOW (7002), C.O. PHILLIPS (7620), C.O.
YOUSUF (18907), C.O. HAMER (18467), C.O.
FLEURIMAND (8299), CAPTAIN MASSEY (126),
CAPTAIN HARVEY (1109), CAPTAIN PENDEGRASS
(68),

                             Defendants.
-----------------------------------------------------------x
-----------------------------------------------------------x

KYLE ROBINSON,

                             Plaintiff,

        -against-

C.O. BENBOW (7002), C.O. PHILLIPS (7620), C.O.
YOUSUF (18907), C.O. HAMER (18467), C.O.
FLEURIMAND (8299), CAPTAIN MASSEY (126),
CAPTAIN HARVEY (1109), CAPTAIN PENDEGRASS
(68),

                             Defendants.
-----------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-6-13

12 Civ. 6365 (PKC) (JLC)

13 Civ. 3511 (PKC) (JLC)

13 Civ. 3514 (PKC) (JLC)

MEMORANDUM
AND ORDER

CASTEL, District Judge:

These three actions are brought against the City of New York and certain corrections officers, alleging violations of certain unspecified constitutional rights in connection with a group strip search in a mess hall at Riker's Island conducted in front of trainee corrections officers. Defendants have moved to dismiss all three actions. For the reasons discussed below, defendants' motions are granted in part and denied in part.

I.      BACKGROUND

On August 20, 2012, pro se plaintiffs Vincent George Jr., Marvin Sanders, Darvell Jones, Alfonso Durn, William Parker, Perry Board, Keith Walcott, Karim Kamal, Rivera Candido, Mark Enoch, Jose Zaball, and Kyle Robinson brought this action in a single complaint (the "Initial Complaint") against the City of New York, the New York Department of Corrections, several unidentified corrections officers who worked in the mess hall at the George R. Vierno Center (the "GRFC"), a correctional facility located on Rikers Island, the GRFC warden, and "Any and All Municiple [sic] Defendants."[1]  Magistrate Judge James L. Cott dismissed without prejudice the claims of plaintiffs Jones, Walcott, Kamal, Candido, and Enoch for failure either to pay filing fees or file proper applications to proceed in forma pauperis. (Dkt. Nos. 31-40)[2]

On December 21, 2012, this Court dismissed by order all claims against the New York City Department of Correction, a non-suable entity (the "December 12 Order"). (Dkt. No.

---

[1] In the original complaint, Jose Zaball was listed as "Vose Raball," and Perry Board was listed as "Broad Perry." Subsequent signed filings by the two individual plaintiffs indicate that the original names were likely inaccurate. See Dkt. Nos. 17, 60.

[2] The docket citations here refer to the docket for 12 Civ. 6365, which includes all relevant submissions connected with the other two docket numbers listed in the caption. Similarly, references to defendants' Memorandum on this motion pertain to Dkt. No. 83 rather than the other two (substantially similar) Memoranda filed.

43) The December 12 Order directed the New York City Corporation Counsel to provide the names and service addresses for the "John" and "Jane Doe" corrections officers and supervisors involved in the incident giving rise to the complaint. Id. Once the Office of the Corporation Counsel complied with the Order, plaintiffs were required to file an amended complaint naming the unidentified individuals. Id. The December 12 Order further provided that the amended complaint would replace, rather than supplement, the Initial Complaint. Id.

Instead of filing one amended complaint, plaintiffs filed three. On March 26, 2013, plaintiffs filed a complaint signed only by Vincent George Jr. (the "George Complaint") that purported to be on behalf of all twelve original plaintiffs. (Dkt. No. 57) The George Complaint named the same defendants as the Initial Complaint, and also named eight individual corrections officers ("C.O.'s"): C.O. Benbow, C.O. Phillips, C.O. Yousuf, C.O. Hamer, C.O. Fleurimand, Captain Massey, Captain Harvey, and Captain Pendegress. Id. On April 10, 2013, plaintiffs Jose Zaball and Kyle Robinson filed two additional amended complaints (the "Robinson/Zaball Complaints"). (Dkt. Nos. 60, 61) These amended complaints each named only the seven plaintiffs who remain in the action, and each was signed only by the individual plaintiff filing the complaint. Id. Further, the Robinson/Zaball Complaints omitted the original list of defendants, instead listing only the same eight corrections officers named in the George Complaint. The other four remaining plaintiffs have not filed signed amended complaints.

Because of differences between the amended complaints, particularly with respect to parties named and remedies sought, Magistrate Judge Cott severed the claims into three separate actions. (Dkt. No. 64) Magistrate Judge Cott further ordered plaintiffs Sanders, Duran, Board, and Parker to file signed, amended complaints by June 12, 2013, indicating that if plaintiffs failed to do so or otherwise respond he would recommend dismissal for failure to

prosecute. Id. After advising the Court of a change of address, plaintiff Parker filed an executed signature page on June 21, 2013, joining the George Complaint. (Dkt. No. 72) To date, plaintiffs Sanders, Duran, and Board have not responded.

Plaintiffs' three amended complaints (together, the "Complaints") all focus on an alleged incident on August 2, 2012 at approximately 3:45 PM in the mess hall at the GRFC. The factual allegations in the Robinson/Zaball Complaints, though handwritten, are nearly identical in language. (Dkt. Nos. 60, 61) The Complaints all allege an illegal strip search conducted in violation of prison procedures. Plaintiffs allege that, in front of one another and corrections officer trainees in the GRFC mess hall, they were forced to strip naked, turn around, and squat down. The Complaints further allege that the search was inconsistent with typical search procedures, because mess hall searches are usually "pat searches" rather than strip searches, and strip searches are usually conducted privately, behind dividers, rather than in front of a group of other inmates and corrections officers. Plaintiffs allege that the searches were conducted in this fashion in order to "make a spectacle of [the inmates] for the new recruits," "for the sake of an example," and to humiliate and "bring shame to" the inmates. (Dkt. Nos. 57, 60, 61 at 2-3)

With respect to the relief requested, the Complaints diverge. The George complaint seeks injunctive relief in the form of termination of the employment of all involved corrections officers, and also seeks damages in an amount left to the discretion of the Court. (Dkt. No. 57 at 5) The Robinson/Zaball Complaints each seek damages of $100,000 to redress constitutional rights violations and emotional and psychological harms, and also request that the alleged practices be stopped. (Dkt. Nos. 60, 61 at 5)

Defendants filed three motions to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., seeking dismissal of the Complaints for failure to state a claim. Because the Complaints

4

concern the same incident and, ultimately, the same defendants, and because defendants'
arguments in each of the three motions are nearly identical, this Memorandum and Order will
treat the three cases as one.

Plaintiff William Parker has filed an affirmation in opposition to motion (the
"Parker Affirmation"). (Dkt. No. 85)  The Parker Affirmation asserts that the strip search was
conducted despite his specific request for a private strip search because he was a Muslim
observing Ramadan. Id. at 1.

II.      FAILURE TO PROSECUTE CLAIMS

Defendants have moved to dismiss the claims of plaintiffs Sanders, Board, and
Duran under Rule 41(b), Fed. R. Civ. P.  These plaintiffs, each of whom failed to sign any of the
three Complaints, were directed by Magistrate Judge Cott's May 14, 2013 Order to comply with
Rule 11(a), Fed. R. Civ. P., which requires that "[e]very pleading, written motion, and other
paper must be signed by . . . a party personally if the party is unrepresented." (Dkt. No. 64)
Specifically, the order provided:

> **Sanders, Duran, Board, and Parker must submit signed, amended
> complaints by <u>June 12, 2013</u>.** [. . .] If these four remaining plaintiffs fail to
> submit signed amended complaints or otherwise respond to this Order by June 12,
> I will recommend that their claims be dismissed for failure to prosecute.

Id. (emphases in original)  To facilitate this request, the Court sent copies of the Amended
Complaints with blank signature pages to each of the three plaintiffs.  None of the three has
responded to the May 14, 2013 Order to date.

"If the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil
Procedure] or a court order, a defendant may move to dismiss the action or any claim against it."
Fed. R. Civ. P. 41(b).  "[D]ismissal of an action under Rule 41(b) is considered a "'harsh

5

remedy' that should 'be utilized only in extreme situations.'" Lewis v. Rawson, 564 F.3d 569, 576 (2d Cir. 2009) (quoting Minette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993)). This is especially true when the plaintiff is a pro se litigant. LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 209 (2d Cir. 2001) (noting that "pro se plaintiffs should be granted special leniency regarding procedural matters" and "deference is due to a district court's decision to dismiss a pro se litigant's complaint only when circumstances are sufficiently extreme.") (citation and quotations omitted).

The Second Circuit has "fashioned guiding rules that limit a trial court's discretion" when determining whether to dismiss for failure to prosecute. United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 254 (2d Cir. 2004). Under these rules, district courts must consider five factors in determining whether dismissal pursuant to Rule 41(b) is proper: "(1) the duration of the plaintiff's failures, (2) whether plaintiff had received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether the district judge has take[n] care to strik[e] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard . . . and (5) whether the judge has adequately assessed the efficacy of lesser sanctions." LeSane, 239 F.3d at 209 (quoting Alvarez v. Simmons Mkt. Research Bureau, Inc., 839 F.2d 930, 932 (2d Cir. 1988)). "[N]one of the five factors is separately dispositive." Id. at 210 (citing Nita v. Connecticut Dep't of Envtl. Prot., 16 F.3d 482, 485 (2d Cir. 1994).

A. Delay

Plaintiffs were ordered to submit a signed complaint no later than June 12, 2013. Over four months have elapsed since this deadline, and none of the three plaintiffs has either complied with the May 14, 2013 Order or sought additional time to do so. Plaintiff Sanders last

contacted the Court on March 29, 2013, when he submitted a change of address.  (Dkt. No. 58)
Plaintiffs Board and Duran last contacted the Court in October and November 2012,
respectively, when each filed a declaration in support of their request to proceed in forma
pauperis.  (Dkt. Nos. 17, 23)  In sum, there has been utter silence from these three plaintiffs since
early 2013.  The considerable delay thus weighs in favor of dismissal.

B.  Notice

In clearly-worded bold typeface, the May 14, 2013 Order directed compliance
with the signature requirement, and further expressly warned that the Magistrate Judge would
recommend dismissal for failure to prosecute if plaintiffs failed to comply with the Order.  The
Court finds that plaintiffs received meaningful, non-technical notice that failure to sign the
complaint would likely result in dismissal of their claims.  See Lucas v. Miles, 84 F.3d 532, 535
(2d Cir. 1996) ("A warning to a pro se litigant must be . . . specific before it will constitute a
warning for the purpose of this analysis.").

C.  Prejudice to Defendants

There is no evidence in the record that plaintiffs' delay already has caused
prejudice to defendants.  However, these section 1983 claims are brought against corrections
officers in their individual capacities. The individuals stand accused of serious constitutional
violations. The pending litigations are matters which properly may be inquired into on a
mortgage or car loan application or future employment application.  The defendants and the
public are entitled to have the cloud over the defendants' names resolved one way or another.
Though prejudice may not yet have occurred, it is a foreseeable consequence of plaintiffs'
inaction.  This factor thus weighs slightly in favor of dismissal.

D. Balancing Alleviation of Court Calendar Congestion and Right to be Heard

Each plaintiff has a right to his day in Court. This right is qualified by the obligation to comply with lawful Court orders. Noncompliance undermines the ability of the Court to manage its docket and dispense justice to all litigants in an expeditious manner. Further, the Magistrate Judge's Order not only expressly apprised plaintiffs of their obligation to respond, but also mailed copies of each Amended Complaint with a blank signature page to each individual plaintiff. The Court notes that the presence of these three cases on its docket has not materially enhanced "court calendar congestion." Alvarez, 839 F.2d at 932. Thus, the court finds that this factor weighs slightly against dismissal.

### E. Efficacy of Lesser Sanctions

The Court has considered the efficacy of sanctions less severe than dismissal and has concluded that they are inadequate. The Order clearly explained that if the plaintiffs failed to file signed amended complaints, the Magistrate Judge would "recommend that their claims be dismissed for failure to prosecute." In light of the express warning of dismissal, there is no reason to believe that a lesser sanction would be effective. See Rusza v. Rubenstein & Sendy Attys at Law, 520 F.3d 176, 178 (2d Cir. 2010) ("in light of Rusza's failure to respond to the notice threatening dismissal, it is equally unclear that a 'lesser sanction' would have proved effective in this case.").

For the foregoing reasons, the claims of plaintiffs Sanders, Board, and Duran are dismissed with prejudice for failure to prosecute under Rule 41(b).

### III.    PLEADING STANDARDS

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing a complaint, courts must draw all reasonable inferences in favor of the non-movant.  See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam).

   "A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U .S. 89, 94 (2007) (citation and quotation marks omitted).  Courts continue to afford special solicitude to pro se complaints after Iqbal and Twombly.  See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).  Plaintiffs' pro se pleadings "must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'"  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  Nevertheless, pro se plaintiffs bringing an action under section 1983 must make specific claims, because "allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).  Finally, even an unopposed Rule 12(b)(6) motion is subject to review on its merits.  McCall v. Pataki, 232 F.3d 321, 322 (2d Cir. 2000).

IV.  CLAIMS AGAINST MUNICIPAL DEFENDANTS

   A municipality cannot be held liable for a damage claim unless a plaintiff's injury was a result of municipal policy, custom, or practice.  See generally Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978).  The City of New York may not be held liable under section 1983 based on a theory of vicarious liability for the conduct of its employees.  Id. at 691.

Here, plaintiffs have alleged generally that the strip search was conducted in a manner inconsistent with the usual policies of the GRVC facility.  Beyond listing the City of New York as a party, plaintiffs have made no allegations involving the City.  Further, plaintiffs' allegations do not allege that the search was a result of municipal policy, custom, or practice; to the contrary, they have alleged that the search was a departure from usual DOC procedures. Thus, the allegations in the complaints are insufficient to support a claim of municipal liability. See Roe v. City of Waterbury, 542 F.3d 31, 36-37 (2d Cir. 2008) (plaintiff must allege "deliberate conduct" that renders the municipality "the 'moving force' behind the alleged injury.").  Plaintiffs' claims against the City of New York must therefore be dismissed.

The George Complaint also listed "Any and All Municipal Defendants" in its caption.  For the avoidance of doubt, because no municipal defendants other than the City of New York and the Department of Corrections have been served by plaintiffs, all other claims against unidentified municipal defendants are dismissed pursuant to Rule 4(m), Fed. R. Civ. P., for failure to serve any such defendants within the 120 day limit provided by the Rule.

## V.       CLAIMS AGAINST GRFC WARDEN

Though "Warden at GRFC" was listed as a party in the Initial Complaint, no warden party was named in any of the three amended Complaints. In any event, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Spavone v. NY. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) (quotation marks omitted).  The Complaints make no reference to any warden having played any role in the strip search.  In this context, the failure to allege that an individual was personally and directly involved is a fatal

10

defect on the face of the complaint.  See Iqbal, 556 U.S. at 670; Alfaro Motors, Inc. v. Ward, 814

F.2d 883, 886 (2d Cir. 1987).  Accordingly, plaintiffs' claims against the warden defendant must

be dismissed.


VI.        CLAIMS AGAINST CORRECTIONS OFFICERS

To state a claim under section 1983, a plaintiff must allege that a person acting

under color of state law deprived him or her of a right secured by the Constitution or laws of the

United States.  42 U.S.C. § 1983.  The complaints adequately allege that the individual

defendants were New York City Department of Corrections officers who by reason of the

authority of their positions acted under color of state law.

While the amended complaints do not specify which specific constitutional or

federal rights were violated by defendants' actions, the facts alleged suggest that plaintiffs may

have intended to bring claims based on violations of the First, Fourth, and Eighth Amendments.

Each of these Amendments binds the states by operation of the Fourteenth Amendment.  See

Cantwell v. Connecticut, 310 U.S. 296, 303 (1940) (First Amendment right to free exercise of

religion); Mapp v. Ohio, 367 U.S. 643, 655-56 (1961) (Fourth Amendment protection against

unreasonable searches and seizures); Robinson v. California, 370 U.S. 660, 675 (1962) (Douglas,

J., concurring) (Eighth Amendment prohibition on cruel and unusual punishment).

Although defendants have raised a defense of qualified immunity with respect to

the corrections officers involved, "[t]he 'better approach to resolving' such claims is to first

determine whether the plaintiffs have alleged a violation of a constitutional right, and then, if

they have, to determine whether the right was clearly established at the time of the alleged

violation."  Duamutef v. Hollins, 297 F.3d 108, 111 (2d Cir. 2002) (citations omitted).  Thus,

each of plaintiffs' constitutional claims is addressed in turn before reaching the issue of qualified immunity.

### A. Fourth Amendment Claims

Plaintiffs' allegations concerning the purpose and manner of execution of the strip search implicate the Fourth Amendment's proscription against unreasonable searches and seizures. Inmates confined in prison retain basic constitutional rights. Bell v. Wolfish, 441 U.S. 520, 545 (1979). Among those rights is the freedom from unreasonable searches. Id. at 558. The test of reasonableness as applied to prison inmates was set forth in Bell:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Id., 441 U.S. at 559.

Defendants contend that plaintiffs have failed to allege a violation of the Fourth Amendment. Relying chiefly on Florence v. Bd. of Chosen Freeholders, 132 S.Ct. 1510 (2012), they argue that courts in this Circuit and beyond have held that strip searches, even when conducted in the view of other inmates and corrections officers, are constitutional, and that reviewing courts must defer to the decisions of prison authorities. Florence did "confirm[] the importance of deference to correctional officials and explain[] that a regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" 132 S. Ct. at 1515 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987). But the court's opinion expressly disclaimed addressing a strip search where corrections officers engage in "intentional humiliation and other abusive practices." Id. at 1523.

As defendants concede, strip searches performed with no legitimate penological

purpose but merely to intimidate, harass, or punish are impermissible. By its own terms, <u>Florence</u> was not a license for prison staff to conduct strip searches anytime, anywhere, or in any manner. The deference referred to in <u>Florence</u> and throughout Fourth Amendment prison search jurisprudence only attaches in the case of a prison regulation or policy based on a legitimate penological consideration. For instance, <u>Florence</u> evaluated the propriety of intake strip search procedures conducted on all inmates upon their admission to the prison facility. 132 S.Ct. at 1513. Similarly, <u>Bell v. Wolfish</u> held reasonable a policy requiring body cavity searches following contact visits with persons outside the prison. 441 U.S. 520, 558 (1979). Both decisions reviewed in depth the legitimate penological rationales underpinning the challenged policies.

In contrast, here plaintiffs have alleged that the search at issue was not a standard search conducted in conformity with established policy and procedure in service of legitimate ends. According to plaintiffs, the strip search was performed in order to humiliate the inmates and to "make a spectacle" of the inmates in front of trainee corrections officers. Defendants have not argued that instruction to trainee officers on how to inflict public humiliation on inmates is a legitimate penological purpose. The complaints do not reveal any other purpose for the strip search.

A prison strip search must be conducted for a legitimate penological purpose. See, e.g., <u>Israel v. City of New York</u>, 11 Civ. 7726, 2012 WL 4762082, at *2-3 (S.D.N.Y. Oct. 5, 2012) (three strip searches of a pre-trial detainee were permissible when conducted pursuant to established, express DOC policies serving the legitimate interest of preventing the smuggling of contraband); <u>Miller v. Bailey</u>, 06 Civ. 5493, 2008 WL 1787692, at *10 (E.D.N.Y. Dec. 20, 2007) (claim based on improper strip search dismissed where plaintiff failed to allege that the search

was performed for improper purposes); Brown v. Graham, 07 Civ. 1353, 2010 WL 6428251, at

*13-14 (N.D.N.Y. Mar. 30, 2012) (strip search was reasonable where plaintiff made no

allegation that search was intended to intimidate, harass, or punish, and defendant produced

evidence that search was conducted for protection of plaintiff, who was on suicide watch);

Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003) ("a strip search of a male prisoner in front

of female officers, if conducted for a legitimate penological purpose, would fail to rise to the

level of a" constitutional violation) (emphasis added); Elliot v. Lynn, 38 F.3d 188 (5th Cir. 1994)

(visual body cavity search conducted in presence of other inmates and correctional officers was

reasonable in view of legitimate security concerns); Franklin v. Lockhart, 883 F.2d 654 (8th Cir.

1989) (legitimate security concerns justify conducting strip searches of inmates in view of other

inmates); Michenfelder v. Sumner, 860 F.2d 328 (9th Cir. 1988) (same).

 Because the plaintiffs have adequately and plausibly alleged that the strip search

was conducted to "make a spectacle of [the inmates] for the new recruits" and to publically

humiliate the plaintiffs, defendants' motion to dismiss plaintiffs' claims based on a violation of

the Fourth Amendment is denied.

 B. First Amendment Claims

 In the Parker Affirmation, but not in any of the Complaints, plaintiff Parker stated

that he was "a religious person and was practicing [his] religious rights as a muslin [sic]

(Ramadan) and told the office [sic] [he] should be stripped privately." (Dkt. No. 85 at 1)  A First

Amendment free exercise claim requires a showing "that the disputed conduct substantially

burdens [a detainee's] sincerely held religious beliefs." Salahuddin v. Goord, 467 F.3d 263, 274–

75 (2d Cir. 2006) (internal citation omitted).  Once that showing is made, "[t]he defendants then

bear the relatively limited burden of identifying the legitimate penological interests that justify

the impinging conduct." Id. at 275.

Although two district court decisions have declined to dismiss First Amendment free exercise claims in the context of a prison strip search, see Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 323-24 (S.D.N.Y. 2006) (Marrero, J.); Show v. Patterson, 955 F.Supp. at 191, no decision of the Supreme Court or the Second Circuit has ever recognized such a claim of a free exercise violation, so far as this Court has determined.

For two independent reasons, the Court needs not reach the question of whether a strip search of a Muslim inmate amounts to a substantial burden on the inmate's religious beliefs. First, the allegations did not appear in any of the Complaints; instead, they were made for the first time in the Parker Affirmation by a single plaintiff responding to defendants' motion. Pro se plaintiffs are not excused from the normal rules of pleading, and "dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." Geldzahler v. N.Y. Med. College, 663 F.Supp.2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Fed. Practice § 12.34[4][a] at 1272.7 (2005)). Second, because plaintiffs have adequately alleged that the search was not conducted for any legitimate penological purpose, their claims are more properly considered as a Fourth Amendment violation as discussed above.[3] Plaintiffs' First Amendment claims are therefore dismissed.

C. Eighth Amendment Claims

Plaintiffs' allegations concerning the manner of execution of the strip search and the resulting humiliation and emotional harms potentially raise an Eighth Amendment claim of cruel and unusual punishment. The Eighth Amendment provides that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend. VIII. That rule is violated by

---

[3] Further, even if a free exercise strip search claim were recognized here, the lack of controlling precedent would likely entitle defendants to prevail on their qualified immunity defense. See Pearson v. Callahan, 555 U.S. 223, 231 (2009).

unnecessary and wanton inflictions of pain and suffering.  See Whitley v. Albers, 475 U.S. 312,

320 (1986).  Prison officials violate the Eighth Amendment only when both of two requirements

are met: (1) as an objective matter, the alleged deprivation must be "sufficiently serious," and (2)

the alleged perpetrator must, subjectively, possess a "sufficiently culpable state of mind."

Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quotations omitted).

        Under certain limited circumstances, the manner in which a search is conducted

may give rise to an Eighth Amendment claim.  See Frazier v. Ward, 426 F.Supp. 1354, 1366

(N.D.N.Y.1977) (body cavity search "not based on reasonable belief standards [] and extremely

dehumanizing in its method of conduct" violates the Eighth Amendment).  However, "[e]ven

where inmates allege aggressive or inappropriate behavior during strip searches, courts are

reluctant to find that such activity rises to the objectively serious level of an Eighth Amendment

violation."  Vaughn v. Strickland, 12 Civ. 2696, 2013 WL 3481413, at *3 (S.D.N.Y. July 11,

2013) (citation and quotations omitted).  See, e.g., Boddie v. Schneider, 105 F.3d 857, 861 (2d

Cir. 1997) (finding that plaintiff's allegations of multiple instances of "despicable" sexual abuse

did not state an Eighth Amendment claim); Show v. Patterson, 955 F. Supp. 182, 191-92

(S.D.N.Y. 1997) (distinguishing Frazier and finding no Eighth Amendment claim where

plaintiffs alleged that guards strip searched them in the GRFC mess hall for the sole purpose of

humiliation); Harris v. City of New York, 01 Civ. 6927, 2003 WL 554745, at *5 (S.D.N.Y. Feb.

26, 2003) (finding that plaintiff's allegations of a humiliating strip search did not rise to the level

of an Eighth Amendment violation).  LaRocco v. N.Y.C. Dep't of Corr., 99 Civ. 9759, 2001 WL

1029044, at *5 (S.D.N.Y. Aug. 31, 2001), report and recommendation adopted, Sept. 26, 2001

(Dkt. No. 31) (holding that allegations that the officer forced the plaintiff-inmate to "undergo a

routine where he had to lift his penis and spread his buttocks about three times" were "not severe

enough" to constitute an Eighth Amendment claim and recommending dismissal).

Although plaintiffs have alleged that the strip search was conducted to humiliate the inmates and "make a spectacle" for the new recruits, plaintiffs did not allege that the corrections officers sexually or verbally harassed them. Further, the search alleged was visual and conducted at the direction of the officers; plaintiffs have not alleged any inappropriate physical contact by the defendants in the course of the search. (Dkt. Nos. 57, 60, 61 at 2-3) Even if it were assumed that plaintiffs' allegations could satisfy the subjective requirement of a culpable state of mind for an Eighth Amendment claim, the law of this Circuit indicates that a strip search without elements of sexual harassment, excessive force, or indeed any physical contact at all is not "sufficiently serious" under the objective prong to support a claim based on cruel and unusual punishment under the Eighth Amendment. To the contrary, as demonstrated by the cases cited above, allegations of far more serious misconduct by corrections officers have consistently been held insufficiently serious to state an Eighth Amendment claim. Accordingly, plaintiffs' claims that the searches constituted cruel and unusual punishment under the Eighth Amendment are dismissed.

VII.    QUALIFIED IMMUNITY

Defendants argue in the alternative that, to the extent plaintiffs have alleged constitutional rights violations, the corrections officers are entitled to qualified immunity because plaintiffs had no clearly established right to be exempt from the challenged strip search. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. at 231 (quoting

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Qualified immunity shields government officials performing discretionary acts from liability if (1) their conduct did not violate clearly established statutory or constitutional rights, or (2) if it was objectively reasonable for them to believe their acts did not violate those rights. Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir. 2001). "Whether a defendant officer's conduct was objectively reasonable is a mixed question of law and fact." Manganiello v. City of New York, 612 F.3d 149, 164 (2d Cir. 2010) (internal quotation omitted). "[T]he court must decide whether it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, i.e., whether officers of reasonable competence could disagree as to the lawfulness of such conduct." Id. at 165.

Focusing on the first element, whether the right was clearly established, a court must determine (i) whether the right at issue was defined with reasonable clarity; (ii) whether the Supreme Court or the Second Circuit had affirmed the existence of the right; and (iii) whether reasonable police officers in the defendants' position would have understood from the existing law that their conduct was unlawful. Id.

The issue in this action is not whether inmates have a general right to be free from visual strip searches, but rather whether the challenged search was conducted with any legitimate penal purpose. As discussed above, the jurisprudence of the Fourth Amendment does not grant prison officials an unconditional right to conduct strip searches in any manner they choose. Instead, courts defer to the expertise of prison authorities when, and only when, prison regulations and policies are based on a legitimate penological purpose. An unbroken line of authority in the Supreme Court and the Second Circuit has repeatedly affirmed that prison authority actions are not entitled to deference—and may be held unconstitutional—whenever

18

they are not undertaken pursuant to any legitimate penological goal, or are designed to intimidate, harass, or punish. See, e.g., Bell v. Wolfish, 441 U.S. at 539; Hudson v. Palmer, 468 U.S. 517, 528 (1984) ("[I]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society."); Hodges v. Stanley, 712 F.2d 34, 35-36 (2d Cir. 1983) (per curiam); Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997); Jackson v. Mann, 196 F.3d 316, 320 (2d Cir. 1999); Jean-Laurent v. Wilkerson, 438 F.Supp.2d 318, 323 (S.D.N.Y.2006) (collecting circuit cases).

Thus, because clearly established law in the Second Circuit on August 2, 2012 demonstrated that a strip search conducted without a legitimate penological purpose violated constitutional rights, defendants' invocation of qualified immunity fails.

## VIII. REMEDIAL CONSIDERATIONS

Plaintiffs seek, in addition to damages, certain injunctive relief against the correctional officers involved in the alleged incident. (Dkt. No. 57 at 5) Although defendants argue that plaintiffs' requests for injunctive relief should be dismissed for lack of standing, the issue need not be addressed at this juncture.

Plaintiffs Robinson and Zaball seek $100,000 in damages for the constitutional violations alleged. (Dkt. Nos. 60, 61 at 5) The George Complaint requests an unspecified amount of damages. (Dkt. No. 57 at 5) Citing the Prison Litigation Reform Act ("PLRA"), defendants contend that because plaintiffs have failed to allege any physical injury, their claims must be dismissed in full.

The PLRA sets forth limitations applicable to federal civil actions brought by prisoners alleging mental and emotional injuries. 42 U.S.C. § 1997(e). Specifically, section

1997(e) states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Id. Thus, under the statute, a "plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury." Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002).

Defendants are incorrect in assuming that the PLRA bars plaintiffs' claims in their entirety. Notwithstanding the PLRA limitation, the Second Circuit has explained that "Section 1997e(e) purports only to limit recovery for emotional and mental injury, not entire lawsuits," and that the section should not be read "as a general preclusion of all relief if the only injury the prisoner can claim—other than the intangible harm presumed to flow from constitutional injuries—is emotional or mental." Id. at 418. Accordingly, the Court held that section 1997e(e) did not prevent plaintiffs from vindicating their constitutional rights through nominal damages, punitive damages, declaratory relief, or injunctive relief. Id.

Therefore, notwithstanding any restrictions on recovery imposed by the PLRA, the statute does not bar plaintiffs' claims in their entirety.

CONCLUSION

For the reasons set forth above, the defendant's motions to dismiss (Dkt. No. 80 in 12 Civ. 6365, Dkt. No. 14 in 13 Civ. 3511, Dkt. No. 12 in 13 Civ. 3514) are granted in part and denied in part as follows. Defendants motion is granted with respect to the claims of plaintiffs Sanders, Perry, and Duran; all claims against defendants Warden at GRFC, the City of New York, and any other still-unnamed municipal defendants; and all claims predicated on violations of the First and Eighth Amendments. Defendants' motion to dismiss is denied with

respect to plaintiffs' claims that the strip search violated a right protected by the Fourth Amendment.  In light of the previously-effected division of claims, the Clerk shall remove: (1) all plaintiffs in 13 Civ. 3511, except for Jose Zaball, (2) all plaintiffs in 13 Civ. 3516, except for Kyle Robinson, and (3) all plaintiffs in 12 Civ. 6365, except for Vincent George Junior, William Parker, Marvin Sanders, Alfonso Duran, and Broad Perry.  Defendants' counsel is ordered to mail to the plaintiff copies of all unpublished authorities cited herein.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
      November 6, 2013